No. 14-14555-FF

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

———————————

WAYNE CHADWICK,

Plaintiff-Appellant,

v.

BANK OF AMERICA, NATIONAL ASSOCIATION,

Defendant-Appellee.

———————————

On appeal from the United States District Court
for the Northern District of Georgia,
Case No. 1:12-cv-03532-TWT

———————————

# REPLY BRIEF FOR THE APPELLANT

———————————

Richard S. Alembik
Georgia State Bar No. 008770
RICHARD S. ALEMBIK, PC
315 W. Ponce de Leon Ave. Ste. 250
Decatur, Georgia 30030-5100
Telephone: 404-373-0205
Facsimile: 404-795-8999
general_mailbox@alembik.com

*Counsel for Plaintiff-Appellant Wayne Chadwick*

# TABLE OF CONTENTS

Argument and Citations of Authority. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.    BANA's inability to distinguish the fact pattern in this appeal from that of *Atlanta Dwellings* without relying on disputed evidence and without ignoring undisputed evidence amplifies the District Court's error.. . . . . 3

II.   BANA ignores factual elements of this appeal that generate triable issues of fact regarding whether BANA was required to give Chadwick a reasonable opportunity to cure his arrearage before it foreclosed.. . . . 7

III.  BANA confuses Chadwick's efforts to strike BANA's record-custodian affidavit with his desire to impeach the factual allegations BANA attempts to extract from its computerized business records. . . . . . . . . 12

IV.   Even BANA's own corporate representative could not deny that BANA's September 2, 2011 e-mail could represent an assurance by BANA that Chadwick's home was not at immediate risk of being auctioned, thus substantiating Chadwick's dual-tracking theory of wrongful foreclosure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

CERTIFICATE OF COMPLIANCE WITH RULE 32(A)(7). . . . . . . . . . . . . . . . . . . . . 25

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

i

# TABLE OF AUTHORITIES

## CASES

*Atlanta Dwellings, Inc. v. Wright*,
  272 Ga. 231, 527 S.E.2d 854 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3–5, 7, 11

*Benton v. Patel*,
  257 Ga. 669, 362 S.E.2d 217, (1987).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Brooks v. Tennessee*,
  406 U.S. 605, 92 S. Ct. 1891 (1972).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Carter v. Gen. Fin. & Thrift Corp.*,
  96 Ga. App. 426, 100 S.E.2d 99 (Ga. App. 1957). . . . . . . . . . . . . . . . . . . . . 7, 8

*Crawford v. First Nat'l Bank of Rome*,
  137 Ga. App. 294, 223 S.E.2d 488 (1976).. . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Curl v. Fed. Sav. and Loan Ass'n of Gainesville*,
  241 Ga. 29, 244 S.E.2d 812 (Ga. 1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Duncan v. Lagunas*,
  253 Ga. 61, 316 S.E.2d 747 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re Jones*,
  93-1007, 1993 WL 13004586, at *6 (Bankr. S.D. Ga. Dec. 27, 1993).. . . . . 9, 10

*Joseph v. Federal Home Loan Mortgage Corp.*,
  No. 1:12-CV-01022- RWS, 2012 WL 5429639 (N.D. Ga. Nov. 6, 2012). . . . 22

*Macuba v. Deboer*,
  193 F.3d 1316 (11th Cir. 1999) .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*McGee v. Sentinel Offender Services, LLC*,
  719 F.3d 1236 (11th Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Rosenberg v. Collins*,
    624 F.2d 659 (5th Cir. 1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 12–14, 16

*Stimus v. CitiMortgage, Inc.*,
    No. 5:10-CV-435 MTT, 2011 WL 2610391 (M.D. Ga. July 1, 2011). . . . . . . 23

*U.S. v. Glasser*,
    773 F.2d 1553 (11th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 13, 17

*U.S. v. Fendley*,
    522 F.2d 181 (5th Cir. 1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 17

STATUTES

O.C.G.A. § 13–4–4. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

iii

**ARGUMENT AND CITATIONS OF AUTHORITY**

## Introduction

BANA's Brief actually amplifies the District Court's error in granting summary judgment in a case that presents triable issues of fact.

First, BANA attempts to remove this case from the scope of *Atlanta Dwellings v. Wright*[1] — a case applying a heightened standard of substantive protection for mortgage borrowers in the mutual-deviation context — by relying on an alleged fact that it erroneously declared to be undisputed, and by ignoring other facts that are undisputed.

Second, BANA cites several cases for the proposition that a history of a lender's accepting late payments by itself precludes a finding of waiver or mutual deviation. But none of these cases features the additional factual elements that are presented in this appeal. In none of the cases BANA cites does the lender  invite its borrower to pursue a loan modification. In none of these cases does the lender lead its borrower to believe, falsely, that their home was not at risk of immediate

---

[1] "If there is any question as to the construction of a deed to secure debt either by virtue of its original terms or a course of conduct which waives strict performance, a question for the jury is presented." *Atlanta Dwellings, Inc. v. Wright*, 272 Ga. 231, 232, 527 S.E.2d 854, 856 (2000), reconsideration denied March 24, 2000, (quoting *Benton v. Patel*, 257 Ga. 669, 672, 362 S.E.2d 217, 220 (1987)).

1

foreclosure. And in none of these cases does the borrower have the ability to satisfy the stated arrearage.

Third, BANA confuses Chadwick's efforts to strike BANA's surprise-witness record-custodian Brianna May's affidavit with his efforts to be given the opportunity to impeach her testimony. In its Brief, BANA suggests that the deposition of BriAnna May would have yielded the same discovery as that of Luis Reyes.[2] If that's indeed the case, then upon substituting Reyes's testimony for May's hypothetical testimony, her deposition would have demonstrated critical issues with BANA's evidence — namely that BANA's computerized records are demonstrably unreliable, that May's affidavit is not in fact supported by BANA's computerized business records, and that BANA's records should not have been admitted under the *Rosenberg v. Collins* evidentiary standard.[3]

Finally, Even BANA's own corporate representative equivocates on the issue of whether BANA's September 2, 2011 e-mail can be interpreted as giving Chadwick 90 days to complete his loan modification application — thus

---

[2] "Because May's testimony is based upon corporate records, her testimony and the testimony of Luis Reyes are essentially interchangeable for the purpose of supporting BANA's Motion for Summary Judgment based upon BANA's corporate records." Brief of Appellee at p. 50.

[3] *Rosenberg v. Collins*, 624 F.2d 659, 665 (5th Cir. 1980); accord, *U.S. v. Glasser*, 773 F.2d 1553, 1559 (11th Cir. 1985).

2

substantiating Chadwick's dual-tracking theory of wrongful foreclosure.

**I.  BANA's inability to distinguish the fact pattern in this appeal from that of *Atlanta Dwellings* without relying on disputed evidence and without ignoring undisputed evidence amplifies the District Court's error.**

In *Atlanta Dwellings, Inc. v. Wright*, the Supreme Court of Georgia reaffirmed the rule that "if there is any question about the construction of a security deed, by virtue of the terms of the instrument or a course of conduct deviating from its terms, a jury question is presented."[4] The *Atlanta Dwellings* fact pattern involved a lender and borrower who entered into a forbearance agreement to attempt to work through the borrower's default under a commercial mortgage loan. A dispute arose as to whether the borrower was required to satisfy property tax arrearages.[5] The trial court entered an interlocutory injunction against the lender's attempt to foreclose on the borrower's real estate after finding "questions concerning construction of the forbearance agreement and course of conduct, both of which, if proved, could constitute a waiver of strict performance of the deed to secure

---

[4] *Atlanta Dwellings*, 272 Ga. 231, 233, 527 S.E.2d 854, 856 (2000), reconsideration denied March 24, 2000 (internal quotes omitted).

[5] Id. at 855.

3

debt."[6] The Supreme Court of Georgia affirmed.[7] BANA does not challenge the applicability of the rule declared by the Georgia Supreme Court in *Atlanta Dwellings*. It instead attempts to distinguish *Atlanta Dwellings's* facts from those presented in this appeal … but in reliance on disputed and impeachable facts. For example, BANA argues that it is an "undisputed fact that Eric Smith's email was followed by a subsequent communication notifying Chadwick's ATP that the scheduled foreclosure sale would not be postponed and that collections would continue."[8] But this allegation is disputed and demonstrably disingenuous. Chadwick disputed this allegation based on the telephone conversation he had with Eric Smith that same day in which he received personal verbal assurance from Smith (consistently with Smith's September 2nd e-mail) that his home would not be foreclosed on.[9]

Admittedly, the telephone conversation that Chadwick states he had with Smith on September 2, 2011 was not logged in either the *HomeSaver* or the *AS/400*

---

[6] *Atlanta Dwellings*, 272 Ga. at 233, 527 S.E.2d at 856.

[7] Id.

[8] Brief of Appellee at p. 39.

[9] Appendix Vol. 3, Doc. 69-1 at p. 54:21–25 (Chadwick Dep.).

4

platforms. (Chadwick discussed it in his deposition.)[10] However, neither was

Smith's September 2nd e-mail — an e-mail the authenticity of which BANA was

later forced to acknowledge in the litigation.[11] And, to this day, BANA has been

unable to explain why the September 2nd e-mail that Smith undisputably sent to

Chadwick was missing from *HomeSaver*: "[t]here should have been an entry [in

the HomeSaver platform] indicating [the Eric Smith September 2, 2011] e-mail

had been sent out."[12]

BANA also failed to address other facts that make the facts in this appeal even

more compelling than those in *Atlanta Dwellings*. The lender in *Atlanta Dwellings*

did not lead its borrower to believe their home was *not* threatened with

foreclosure, as BANA did here. And, the borrower in *Atlanta Dwellings* did not

have the apparent ability to cure the arrearage, as Chadwick did here.[13]

---

[10]  Appendix Vol. 3, Doc. 69-1 at p. 45:2–21 (Chadwick Dep.).

[11] Appendix Vol. 1, Doc. 65-3 at p. 3 (Chadwick Statement of Material Facts).

[12] Appendix Vol. 7,  Doc. 82 at p. 173:15–17 (Reyes Dep.).

[13] With the record facts construed in Chadwick's favor, a reasonable jury could have found Chadwick had sufficient funds to satisfy the most recent reinstatement figure that BANA had sent him. Supplemental Appendix, Doc 84 at p. 50 ¶ 91. It bears noting that the District Court did not sustain BANA's objection to Chadwick's deposition testimony that he had access, through his father, to funds sufficient satisfy the entire loan. Supplemental Appendix, Doc 84 at p. 51 ¶ 92. Indeed, Chadwick's testimony was not based just on "rank hearsay." See *Macuba*

(continued...)

The absence of Eric Smith's September 2, 2011 e-mail from BANA's HomeSaver database by itself presents a triable issue on BANA's credibility and whether BANA was selective in producing or whether it actually fabricated records of communications between it and Chadwick. BANA's argument that it was Chadwick's failure to provide "required documents" that "BANA was unable to review him for a modification…"[14] underscores this credibility issue in light of the fact that the denial of Chadwick's modification application arrived in a letter dated September 13, 2011,[15] after the September 6, 2011 foreclosure sale had occurred — and 80 days before the December 1, 2011 deadline to submit documents suggested by Smith's September 2, 2011 e-mail.[16]

BANA's reliance on a highly disputed fact to distinguish this case from the

---

[13](...continued)
*v. Deboer*, 193 F.3d 1316, 1324 (11th Cir. 1999) (statement that can be "reduced to admissible evidence at trial" may be considered on summary judgment). The financial condition and paternal instincts of his father could easily be within the personal knowledge of Mr. Chadwick. If BANA takes the position that its business records should be declared admissible, in part, because they were "previously produced to" Chadwick in discovery, Brief of Appellee at 38, then Chadwick's testimony about his father should receive similar weight because it, too, was "previously produced to" BANA in discovery.

[14] Brief of Appellee at p. 21.

[15] Appendix Vol. 7,  Doc. 82 at p. 188:21–22 (Reyes Dep.).

[16] Id.

scope of *Atlanta Dwellings v. Wright* only serves to amplify the District Court's error.

## II. BANA ignores factual elements of this appeal that generate triable issues of fact regarding whether BANA was required to give Chadwick a reasonable opportunity to cure his arrearage before it foreclosed.

BANA cites four cases for the proposition that a history of a lender's accepting late payments by itself precludes a finding of a triable issue as to mutual deviation or waiver. But these cases would only be controlling *if* they had *also* included the following additional factual elements that are presented in this appeal:

- The lender's invitation to its borrower to pursue a loan modification;

- The lender's leading its borrower to believe their home was *not* threatened with immediate foreclosure; and,

- The borrower having the ability to cure the arrearage.

First, BANA cites to *Carter v. Gen. Finance*.[17] But *Carter* is distinguished from this appeal because the lender's intentions in *Carter* were never in doubt. "The plaintiff alleged in his petition that at the time he brought the automobile in to the defendant's office at their request, he was informed by the defendant that they

---

[17] *Carter v. Gen. Fin. & Thrift Corp.*, 96 Ga. App. 423, 100 S.E.2d 99, 101 (1957)

would not refinance the automobile"[18] In contrast, in this appeal it's undisputed that BANA invited Chadwick to apply for a modification, and that he was given an opportunity to modify his loan. The lender in *Carter* did not invite its borrower to pursue a loan modification. The lender in *Carter* did not lead its borrower to believe their automobile was not threatened with foreclosure. And the borrower in *Carter* did not have the apparent ability to cure the arrearage. *Carter* just amplifies the District Court's error.

BANA then cites to *Crawford v. First Nat'l Bank of Rome*, for the proposition that a borrower's receipt of notices of past-due payments and imposition of late charges "manifested an intent on the part of the Bank to demand and enforce strict compliance with the terms of the contract."[19] But the lender in *Crawford* did not invite its borrower to pursue a loan modification. In *Crawford*, the lender declared a default just once, but it "agreed  to reinstate the note if [the borrower] would make the note current…." After the borrower failed to make sufficient payments to bring the note current the lender foreclosed.[20] The lender in *Crawford*  did not lead

---

[18] *Carter*, 96 Ga. App. at 424, 100 S.E.2d at 100.

[19] Brief of Appellee at p. 37, quoting *Crawford v. First Nat'l Bank of Rome*, 137 Ga. App. 294, 296, 223 S.E.2d 488, 490 (1976).

[20] *Crawford*, 137 Ga. App. at 295, 223 S.E.2d at 489.

8

its borrower to believe their home was not threatened with foreclosure. And the borrower in *Crawford* did not have the apparent ability to cure the arrearage. *Crawford*, too, amplifies the District Court's error.

BANA also cites to *Duncan v. Lagunas*[21] for the proposition that a lender's "oral expression of displeasure with the late payments," was sufficient to defeat a claim of mutual departure.[22] But the only elements supporting the borrower's allegation of mutual deviation in *Duncan* was the borrower's acceptance of several late payments.[23] The lender in *Duncan* did not invite its borrower to pursue a loan modification. The lender in *Duncan* did not lead its borrower to believe their home was not threatened with immediate foreclosure. And the borrower in *Duncan* did not have the apparent ability to cure the arrearage. *Duncan,* too, amplifies the District Court's error.

Finally, BANA cites to *In re Jones* for the proposition that only "evidence of acceptance by a creditor of repeated, late, irregular payments from a debtor creates a factual dispute as to whether a 'quasi-new' agreement has been created under

---

[21] *Duncan v. Lagunas*, 253 Ga. 61, 316 S.E.2d 747 (1984).

[22] Brief of Appellee at p. 37.

[23] 253 Ga. at 62–63, 316 S.E.2d at 748.

O.C.G.A. § 13–4–4."[24] But *Jones*, too, featured a lender who "consistently accepted late payments by plaintiff on his account," but also "imposed late payment charges and attempted to collect payments by telephone and letter."[25] The lender in *Jones* did not invite its borrower to pursue a loan modification. The lender in *Jones* did not lead its borrower to believe their home was not threatened with immediate foreclosure. And the borrower in *Jones* did not have the apparent ability to cure the arrearage. *Jones,* too, amplifies the District Court's error.

BANA's argument that "a rational juror simply could not find that the parties, pre-acceleration, intended a mutual departure from the strict terms of the Security Deed," is just not logical.[26] The parties pursued modification discussions in the summer of 2011 while Chadwick was in arrears on his payments.[27] BANA called off the advertised June 2011 foreclosure sale to allow Chadwick to pursue his loan modification.[28] But when Fannie Mae withdrew the authority to recall the August

---

[24] Brief of Appellee at p. 33.

[25] *In re Jones*, 93-1007, 1993 WL 13004586, at *6 (Bankr. S.D. Ga. Dec. 27, 1993).

[26] Brief of Appellee at p. 23.

[27] Appendix Vol. 2, Doc. 67-7 at ¶ 20 (May Aff.)

[28] Id. at ¶¶ 20-23 (May Aff.), Brief of Appellee at p. 18, Appendix Vol. 3 , Doc 69-1 p. 46:12–21 (Chadwick Dep.).

10

2011 notice of foreclosure sale on Sept. 1, 2011,[29] BANA made no mention of this to Chadwick the next day when it suggested that he had 90 days in which to present the documents necessary for his modification to be considered.[30]

Assuming for the sake of argument that BANA had notified Chadwick of the decision to go forward with the foreclosure sale this still would not undermine Chadwick's argument that BANA should have given him "a reasonable opportunity to cure any deviations from the exact terms [of the parties' security deed] before foreclosure can be commenced due to defaults which were tolerated under the quasi new agreement."[31] This would be required for any contracting parties who mutually deviate under O.C.G.A. § 13-4-4. And thus rule is more acute in the context of mortgage servicing, where "any question about the construction of a security deed, by virtue of the terms of the instrument or a course of conduct deviating from its terms," presents a jury question.[32] BANA's attempts to pigeon-hole the facts of this appeal into cases that lack its peculiar factual

---

[29] Appendix Vol. 2, Doc. 67-7 at ¶ 29 (May Aff.).

[30] Appendix Vol. 8, Doc. 82-21 (Reyes Depo. Exhibit No. 34).

[31] *Curl v. Fed. Sav. and Loan Ass'n of Gainesville*, 244 S.E.2d 812, 813 (Ga. 1978).

[32] *Atlanta Dwellings*, 272 Ga. 231, 233, 527 S.E.2d 854, 856 (2000), reconsideration denied March 24, 2000 (internal quotes omitted).

11

elements — the lender's invitation to its borrower to pursue a loan modification, the lender's leading its borrower to believe their home was not threatened with immediate foreclosure, and the borrower having the ability to cure the arrearage — only amplifies the District Court's error.

### III. BANA confuses Chadwick's efforts to strike BANA's record-custodian affidavit with his desire to impeach the factual allegations BANA attempts to extract from its computerized business records.[33]

BANA never addressed Chadwick's argument in his Brief [p. 48–49] regarding the District Court's failure to apply the *Rosenberg v. Collins* computerized-records evidentiary standard to May's testimony or to the BANA computerized business records.[34] To be admissible, computerized records must be shown to have been (1) "kept pursuant to some routine procedure designed to assure their accuracy," (2) "created for motives that would tend to assure accuracy (preparation for litigation, for example, is not such a motive)," and (3) not be "mere accumulations of hearsay

---

[33] Recall that BANA sandbagged Chadwick in discovery. On November 6, 2013, Chadwick served paper discovery on BANA seeking the identities and knowledge of BANA's fact and business-records witnesses, and the identification of business-records evidence BANA would be moving to admit. BANA never identified May as a prospective fact or custodial witness. Appendix Vol. 4, Doc. 73-2 at pp. 9–11 (ROG 2, 3, 6, 7, to BANA). Had BANA identified May as a business-records witness, Chadwick most certainly would have noticed her deposition.

[34] *Rosenberg* at 665.

12

or uninformed opinion.[35]

At page 45 of its Brief BANA suggests that the deposition of its custodial witness, BriAnna May, would have yielded "the same foundational testimony that Chadwick already elicited from Luis Reyes at deposition with respect to precisely the same documents." If by this statement BANA is adopting Reyes's deposition testimony and bona fides as May's testimony and bona fides then May's deposition demonstrates beyond peradventure that BANA fails the *Rosenberg* evidentiary test. Consider the following:

- Reyes and May are each members of a cadre of individuals known as BANA's "Mortgage Resolution Team" ("MRT"), each of whom sports an impressive title (such as "Vice President").[36]

- MRT members are not required to have college degrees.[37]

- MRT members neither make nor service loans. They don't perform underwriting.[38]

---

[35]  *Rosenberg* at 665, citing *U.S. v. Fendley*, 522 F.2d 181 (5th Cir. 1975); accord, *U.S. v. Glasser*, 773 F.2d 1553, 1559 (11th Cir. 1985).

[36]  Appendix Vol. 2, Doc. 67-7 at ¶ 1 (May Aff.), Appendix Vol. 7, Doc. 82 at pp. 9:25–10:02, 10:22–11:01 (Reyes Dep.).

[37]  Appendix Vol. 7, Doc. 82 at p. 36:22–25 (Reyes Dep.).

[38]  Id. at p. 11:5–23.

- MRT members have no functional capacities outside of performing litigation support for BANA's attorneys and acting as BANA's professional witnesses.[39]

- MRT members are assigned to "Mortgage Resolution" teams located in several geographic locations; but, they will often work on cases all over the country depending on work load.[40]

- MRT members all work from their homes when they aren't traveling.[41]

- MRT members access BANA's data through a Virtual Private Network ("VPN") connection from their homes.[42]

- MRT members inform themselves solely by studying BANA's end-user data bases — which are accessible from their home computers' VPN connections.[43]

- MRT members "don't have much interaction with [BANA's] other departments." A trip to a physical BANA office is "usually to get documents

---

[39]  *Rosenberg* at 665, at pp. 10:22–11:1.

[40]  Appendix Vol. 7, Doc. 82 at p. 40:4–11 (Reyes Dep.).

[41]  Id. at pp. 38:21–23, 41:2–4.

[42]  Id. at p. 45:5–10.

[43]  Id. at p. 48:21–49:3.

notarized," or to meet with other local team members.[44]

- MRT members don't interview live witnesses when conducting their research.[45]

- MRT members have access only to a few of BANA's databases;[46] access to other data bases is achieved only by those who have "need-to-know" privileges.[47]

- MRT members are unaware of the existence of methods, protocols, rules, or other standards designed to ensure database integrity or accuracy.[48]

- MRT members know that data, once entered cannot be removed.[49]

- MRT members don't know whether it's possible to determine whether a BANA employee accessed a data base at a particular date or time.[50]

- MRT members don't know whether executive officers, such as the CEO of

--------

[44]   Appendix Vol. 7, Doc. 82 at p. 42:12-20 (Reyes Dep.).

[45] Id. at p. 74:3–8.

[46] Id. at p. 45:15–19.

[47] Id. at pp. 46:21–47:1.

[48] Id. at pp. 49:17–50:1. "Q. What controls are there, if any, that would ensure the accuracy of the information that is put in? A. You know, every department's different. I am not too sure specifically who would be — if there are any type of quality assurance checks completed." Id. at 50:5–9.

[49]   Id. at p. 51:3–14.

[50]   Id. at p. 176:18–22.

15

the company, may have different access privileges to BANA's databases.[51]

- MRT members are unaware of controls to determine whether a data entry was complete when entered.[52]

- MRT members are aware that only the person sending or receiving an e-mail, or that person's "IT guy who's … working on his computer" has access to that e-mail.[53]

- MRT members are aware that e-mails sent or received by BANA employees are purged every 90 days; e-mails are otherwise only *summarized* in servicing notes in the AS/400 database.[54]

In sum, neither Reyes nor (based on BANA's adoption of her deposition testimony) May could come close to carrying BANA's burden of proving that its computerized records had been "kept pursuant to some routine procedure designed to assure their accuracy," "created for motives that would tend to assure accuracy," or that they were not "mere accumulations of hearsay or uninformed opinion."[55]

---

[51]  Appendix Vol. 7, Doc. 82 at p. 51:15–25 (Reyes Dep.).

[52]  Id. at pp. 52:15–53:6 (Reyes Dep.).

[53]  Id. at p. 63:2–6 (Reyes Dep.).

[54]  Id. at p. 54:16–21.

[55]  *Rosenberg v. Collins*, 624 F.2d 659, 665 (5th Cir. 1980), citing *U.S. v.*

(continued...)

What is perhaps most telling about May's affidavit is her assertion that the records are

> "true and correct copies of BANA's and/or its affiliated or predecessor entities *original* [emphasis supplied] records that were made at or near the time of the occurrence of the matters set forth by, or from the information transmitted by, a person with knowledge of these matters, a computer, or other similar digital means."[56]

But this is plainly false based on Reyes's testimony that:

- e-mails sent or received by BANA employees are *purged* every 90 days,

- only the person sending or receiving an e-mail, or "an IT guy who's … working on his computer" has access to that e-mail;[57] and,

- e-mails are only *summarized* in servicing notes in the AS/400 database.[58]

Unless May had access to these e-mails — which Reyes admits was impossible — she could not truthfully have made the statement that "BANA never promised or otherwise represented to Plaintiff that the foreclosure would be postponed or that

---

[55](...continued)
*Fendley*, 522 F.2d 181 (5th Cir. 1975); accord, *U.S. v. Glasser*, 773 F.2d 1553, 1559 (11th Cir. 1985).

[56] Appendix Vol. 2, Doc. 67-7 at ¶ 3b (May Aff.).

[57] Appendix Vol. 7, Doc. 82 at p. 63:2–6 (Reyes Dep.).

[58] Id. at p. 54:16–21.

17

the loan modification would be approved…."[59]

    To further illustrate the absurdity of May's statement that she had reviewed BANA's "original records" is the fact that her review of Eric Smith's September 2nd e-mail (the one advising Chadwick he had 90 days in which to submit his documents) had to have been limited to a review of Smith's *summary* of his e-mail, and not the e-mail itself. In his summary in HomeSaver, he only notated that he (Smith) had advised that the financial documents were "Noted due by ASAP."[60] But in the original e-mail, he led Chadwick to believe that he had up to 90 days to provide his documents, as shown in Figure 1 below.



**Figure 1 Excerpt from the Eric Smith e-mail of Sept. 2, 2011 (Doc. 82-21).**

[59] Appendix Vol. 2, Doc. 67-7 at ¶ 38 (May Aff.).

[60] Appendix Vol. 2, Doc. 67-14 at p. 3.

18

Finally, BANA argues without much conviction that Eric Smith's September 2nd e-mail did not in fact "provide a deadline upon which the documents needed to be submitted, but rather specified that the documents must be "dated" within 90 days."[61] But BANA's own corporate representative doesn't share this interpretation:

> Q.    A reasonable person receives this e-mail saying you have ninety days to submit your paperwork. Would it be a reasonable assumption based on this e-mail that they have ninety days of not being at risk of being foreclosed upon?
>
> A.    *I don't know what -- I don't know the answer to that question.*[62]

In sum, BANA seems to be suggesting that Chadwick's efforts to strike BANA's record-custodian affidavit is some sort of a procedural or tactical gambit. It suggests that Chadwick should have challenged the authenticity of BANA's documents during the discovery period.[63] But Chadwick was never provided the identity of BANA's records custodian, identifying information for Brianna May, or Brianna May's testimony during the discovery period.[64] May's June 2014 affidavit testimony that "[a]t no point did BANA reject Plaintiff's tender or state

---

[61] Brief of Appellee at p 21.

[62] Appendix Vol. 7, Doc. 82 at p. 179:9--17 (Reyes Dep.). Emphasis supplied.

[63] Brief of Appellee at p. 54.

[64] Appendix Vol. 4, Doc. 73-4 at pp. 5–6 (Supp. ROG Response).

that it would not accept Plaintiff's tender,"[65] came as a surprise because it was the first time that BANA produced a witness who suggested that Chadwick had *not* been told that any tender he made would be rejected. And, May's statement that Eric Smith's e-mail of September 2, 2011, was not designed to give Chadwick 90 days in which to complete his application, but "to make sure the documents are current for the modification review…."[66] also came as a surprise — especially in light of Luis Reyes's May 15, 2014 equivocal testimony about the interpretation of that e-mail.[67] "[O]ur adversary system reposes judgment of the credibility of all witnesses in the jury."[68] Our adversarial system requires that Chadwick be given the opportunity to impeach May's affidavit testimony, and to impeach the documents for which it attempts to lay a foundation. By granting summary judgment, the District Court denied Chadwick this opportunity. The District Court erred. This Court should reverse.

---

[65] Appendix Vol. 2,  Doc. 67-7 at ¶¶ 17–18 (May Aff.).

[66] Id. at ¶¶ 30-31.

[67] Appendix Vol. 7, Doc. 82 at p. 179:09–17 (Reyes Dep.).

[68] *Brooks v. Tennessee*, 406 U.S. 605, 611, 92 S. Ct. 1891, 1895 (1972).

**IV.    Even BANA's own corporate representative could not deny that BANA's September 2, 2011 e-mail could represent an assurance by BANA that Chadwick's home was not at immediate risk of being auctioned, thus substantiating Chadwick's dual-tracking theory of wrongful foreclosure.**

It is important to note that Chadwick never predicated his wrongful-foreclosure claim on a promise that he would receive a loan modification. Contrary to BANA's assertion at page 31 of its Brief, Chadwick never suggested that BANA ever assured him he would receive a loan modification. However, by apparently granting Chadwick 90 days in which to complete the loan modification process, BANA certainly communicated to Chadwick in substance *and in writing* that he was not at risk of immediately losing his home. As discussed above, not even BANA's designated corporate representative, Luis Reyes, was able to muster a different interpretation of the language set forth in BANA's September 2, 2011 e-mail.[69]

BANA's contention at page 29 of its Brief that the District Correctly found that it "did nothing to prevent [Chadwick] from making payments on his loan." ignores the various ways in which nefarious actors have unlawfully extracted items of value from others since the beginning of human civilization. For example, under Georgia law the crime of theft by deception involves acquiring someone's

---

[69] Appendix Vol. 7, Doc. 82 at p. 179:09–17 (Reyes Dep.).

21

property through the "intentional use of deceitful means or artful practice … with the specific intent to create a known false impression."[70]

Theft by deception is not a far cry from the practice of dual- tracking described in more detail at pages 47–52 of Chadwick's Brief on Appeal. Chadwick described this practice for the purpose of demonstrating that actors in the mortgage industry, judges, and states' attorneys general agree that dual-tracking is condemnable and unfair conduct. Instead of challenging the proposed standard that Chadwick identified in his discussion on dual-tracking, BANA attempted to argue that there is "absolutely no evidence" that BANA dual-tracked Chadwick by advising him to "stop making his monthly mortgage payments."[71]

But that's not the point. It is true that BANA did not physically interfere with Chadwick's efforts to place a check in his mailbox. But, as discussed, above, BANA's own corporate representative can't deny that BANA left Chadwick with the reasonable impression that he (Chadwick) had up to 90 days in which to secure a loan modification, or to catch up his arrearage.[72] Similar conduct was determined

---

[70] See *McGee v. Sentinel Offender Services, LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013) (internal quotations and citations omitted).

[71] Brief of Appellee at 43.

[72] Appendix Vol. 7, Doc. 82 at p. 179:9--17 (Reyes Dep.).

by two District Courts in Georgia to rise to the level of unfairness to satisfy the elements of the tort of wrongful foreclosure.[73] With the record evidence construed in Chadwick's favor, a reasonable jury could certainly find that the means by which BANA discouraged Chadwick from satisfying his arrearage rose to the level of a deceitful or artful practice — i.e., dual-tracking. The District Court erred when it denied Chadwick his right to allow a jury to determine whether, under these circumstances, BANA's foreclosure of Chadwick's home was the result of an unfair exercise of the power of sale.

## CONCLUSION

It was error for the district court to weigh the evidence presented by the parties and to adjudicate what should have been jury questions regarding mutual departure and good faith in exercising the power of sale. The district court also abused its discretion by admitting surprise hearsay testimony and business-records lacking proper evidentiary foundations. For any or all of these reasons, this Court should reverse the district court and remand this case for trial.

Respectfully submitted this ____12th__ day of __January____, 2015.

---

[73] See *Joseph v. Federal Home Loan Mortgage Corp.*, No. 1:12-CV-01022-RWS, 2012 WL 5429639 (N.D. Ga. Nov. 6, 2012); and *Stimus v. CitiMortgage, Inc.*, No. 5:10-CV-435 MTT, 2011 WL 2610391 (M.D. Ga. July 1, 2011).

23

*/s/ Richard S. Alembik*
Richard S. Alembik
Georgia Bar No. 008770
Attorney for Appellant

RICHARD S. ALEMBIK, P.C.
315 W. Ponce de Leon Ave.
Ste. 250
Decatur, GA 30030-5100
404-373-0205
404-795-8999 (FAX)

24

### CERTIFICATE OF COMPLIANCE WITH RULE 32(A)(7)

Pursuant to Rule 32(a) of the Federal Rules of Appellate Procedure, I certify that this brief complies with the type-volume limitations of FED. R. APP. P. 32(a)(7)(B) because it contains less than **5,392** words, as counted by WordPerfect X5, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii).

I further certify that the brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type-style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionally-spaced typeface using WordPerfect X5 in 14-point Times New Roman font.

I further certify that this brief was uploaded in electronic format to the Court's website, pursuant to Eleventh Circuit Rule 31-5(c) on the ___12th__ day of ____ January_____, 2015.

Respectfully submitted this ____12th___ day of __January___, 2015.


___*/s/ Richard S. Alembik*_____
Richard S. Alembik
Georgia Bar No. 008770
Attorney for Appellant

RICHARD S. ALEMBIK, P.C.
315 W. Ponce de Leon Ave.
Ste. 250
Decatur, GA 30030-5100
404-373-0205
404-795-8999 (FAX)
general_mailbox@alembik.com

### CERTIFICATE OF SERVICE

Pursuant to Fed. R. App. P. 25, I hereby certify that I have this  12th   day of __

January   , 2015, served a copy of the foregoing Brief of Appellant electronically

through the Court's CM/ECF system on all registered counsel. I further certify that

all parties required to be served (including those identified below) have been

served by electronic means using the Court's transmission equipment. I further

certify that the foregoing Brief of Appellant, and an appropriate number of copies,

have this day been filed with the Clerk of Court by dispatch in accordance with

Fed. R. App. P. 25(a)(2)(B).

**Jarrod S. Mendel, Esq.**
**Andrew G. Phillips, Esq.**
**McGuire Woods LLP**
**Promenade II**
**1230 Peachtree St. NE, Ste. 2100**
**Atlanta, GA 30309**

   */s/ Richard S. Alembik*   
Richard S. Alembik
Georgia Bar No. 008770
Attorney for Appellant

315 W. Ponce de Leon Ave.
Ste. 250
Decatur, GA 30030-5100
(404) 373-0205
(404)795-8999 FAX
general_mailbox@alembik.com